**LINCOLN NATIONAL LIFE INSURANCE COMPANY,**
Appellant,

v.

**The BROWN SCHOOLS, INC., Appellee.**

**No. C14-86-855-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 14, 1988.

Shane Sanders, Bryan, for appellant.

C.J. Kling, Elmer McVey, Bryan, Robert M. Roller, Kathryn E. Allen, Austin, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellant, Lincoln National Life Insurance Company [Lincoln], mistakenly overpaid appellee, The Brown Schools, Inc. [Brown], for medical treatment rendered by Brown to Lincoln's insured. Lincoln sued to recover the overpayment; both parties filed motions for summary judgment. The court granted Brown's motion and Lincoln appealed. We affirm.

The essential facts are undisputed. Lincoln provided insurance for medical, hospital coverage and other benefits to Texas A & M University employees and their dependents. The policy covered Mason Rittman, an employee of Texas A & M, and his daughter, Rebecca. Rebecca became eligible to receive benefits under this policy when she was hospitalized in a facility owned and operated by appellee Brown. The policy obligated Lincoln to pay Mr. Rittman benefits for a twenty-four month period during which Rebecca received treatment from Brown. Rittman assigned these benefits due him under the policy to Brown on an assignment form issued by Brown. Lincoln, in compliance with this assignment, paid the money due under the policy directly to Brown. Although the policy expired in July 1983, Lincoln erroneously continued to pay Brown benefits for treatment rendered on behalf of Rittman until February 1984. The overpayments were due solely to Lincoln's mistake. Brown was unaware of the policy terms, and made no representations to induce Lincoln to continue the payments beyond the policy terms.

The trial court granted Brown's motion for summary judgment and denied restitution to Lincoln National for the overpayments. The court also granted Lincoln's motion for partial summary judgment against it's insured, Rittman, and or-

dered the cause against Rittman set for trial on certain disputed facts.

The issue to be decided in this case is simple: Is an insurer entitled to restitution for overpayment made to a hospital on behalf of its insured, where the overpayment was due solely to insurer's mistake as to the amount payable under the policy? The resolution of this issue, however, is not so simple. It involves competing equitable principles, and because of its unique fact situations is a case of first impression in Texas.

■ Generally, any party who has paid funds due to a mistake of fact is entitled to restitution, if the receiving party has not materially changed its position in reliance on the payment. *Bryan v. Citizens Nat. Bank in Abilene*, 628 S.W.2d 761, 763 (Tex.1982); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28 (5th Cir.1963); *Singer v. St. Paul Mercury Ins. Co.*, 478 S.W.2d 579 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.). Restitution in such cases is grounded on the equitable principle that one who, under influence of mistake of fact, has paid money to another not entitled to it, ought not to suffer unconscionable loss nor unjustly enrich the other. *See* RESTATEMENT OF RESTITUTION § 1 (1937).

■ Notwithstanding the general rule, there is no universal principle that one who makes a mistake in paying another is always entitled to restitution. If there is some other reason which makes it unequitable or inexpedient, restitution will be denied the paying party. *See* RESTATEMENT OF RESTITUTION ch. 2 introductory notes (1937). Two interrelated exceptions to restitution under such circumstances have developed. One is indicated in the general rule as stated in the *Bryan* case: If the receiving party has materially changed its position in reliance on the payment, restitution is precluded.

In the case before us, a strong argument could be made that the appellee, Brown, materially changed its position by rendering medical and hospitalization services to the insured, in reliance on continued payments by the insurer under the assignment of insurance benefits. However, the trial court in its summary judgment favoring Brown specifically found there was no evidence that Brown changed its position to its detriment in reliance upon the mistaken payments by Lincoln. Both parties suggest that if material change of position is the exclusive test, the judgment should be remanded to the trial court. Lincoln, on remand, would have the trial court enter summary judgment in its favor because of the no-evidence finding on this issue, and Brown would have it remanded because the evidence raises a fact question as to whether there was a material change of position. We need not discuss the evidentiary effect of the court's finding in the summary judgment, because we find a material change of position unnecessary in our analysis of this case. Further, we note there is considerable authority that the "material change of position" referred to means a change by the payee *subsequent* to the receipt of the money and there is no evidence of such a change in this case. *See* Annotation, *What Constitutes Change of Position By Payee So As To Preclude Recovery of Payment Made Under Mistake*, 40 A.L.R.2d 997 (1955). However, as indicated, we find, without regard to this issue, another equitable basis for affirmance of the summary judgment denying restitution in this case.

The Nebraska Supreme Court addressed a situation essentially similar to this case in *Federated Mutual Insurance Company v. Good Samaritan Hospital*, 191 Neb. 212, 214 N.W.2d 493 (1974). That court concluded the hospital was under no duty to make restitution to the insurance company where the overpayments were due solely to the insurance company's mistake. Just as in this case, the benefits were paid directly to the hospital because of a right-to-payment agreement executed by the insured. The court held in favor of the hospital, finding the insurance carrier was not entitled to restitution because (1) the overpayment was made due solely to the insurer's mistake and lack of care; (2) the hospital made no misrepresentations to induce the payment; and (3) the hospital acted in good faith without prior knowledge of the mis-

take. The court also found there was no evidence that the hospital changed its position to its detriment in reliance upon the mistaken payment. The parties there, as here, stipulated to these facts. The court grounded its decision on the rationale of the RESTATEMENT OF RESTITUTION § 14(1) (1937):

> A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is und^r no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentations and did not have notice of the transferor's mistake.

■ We agree with this approach and find it applicable to the facts of this case. Here, Lincoln knew its own policy payment provisions, but failed to notify Brown as to these provisions; and Lincoln alone made the mistake of paying beyond its responsibility. Brown made no misrepresentations, had no knowledge or notice of appellant's mistake, extended valuable services based on the assignment of payment by the insured, was not unjustly enriched, and simply had no reason to suspect that any of the payments for services rendered were in error. In the normal course of such business, the hospital has no responsibility to determine if an insurance carrier is properly tending to its business.

■ Lincoln makes a spirited argument for recovery based on the law of contractual assignments, and the general rule that one who has paid money to another contracting party is entitled to restitution. Lincoln asserts that a special relationship exists between it and Brown because of the assignment of the policy benefits by its insured to Brown; that by entering into such a contractual relationship with Lincoln, Brown had every right to inquire of Lincoln regarding the terms of the policy. As stated, we have no real quarrel with the general principle of restitution and strict contractual assignment law as stated by appellant, but we do not view this as an issue to be determined strictly by the law

relevant to assignment of contracts. The assignment in this case was not a formal assignment of the insurance contract to Brown. Rather, it was the usual insurance benefits assignment in hospital cases which merely facilitated the payment of the insured's debt to his creditor Brown. Regardless of the contractual vehicle which created it, the problem is one covered by equitable principles of restitution.

■ These principles make a distinction between mistaken insurance payments made to the insured and those made to an innocent third party creditor of the insured. A critical element mandating restitution in mistake-of-fact payment cases is unjust enrichment. Some authorities regard it as prerequisite for restitution. *See* Annotation, *Right of Insurer Under Health Or Hospitalization Policy To Restitution of Payments Made Under Mistake*, 79 A.L.R. 3d 1113, 1116 (1977). Here the appellee extended medical services and was paid. There was no unjust enrichment. We regard Brown's position as analagous to that of a bona fide purchaser. It innocently paid value (medical services) for title to the money it received and is, thereby, under no duty to restore it to the insurer. This approach represents the theoretical basis for the Restatement's position on innocent third-party creditors in such situations. RESTATEMENT OF RESTITUTION § 13(a) comment a; § 14(1) comment a (1937); *See also Federated Mutual v. Good Samaritan Hospital*, 214 N.W.2d at 494–95.

■ Being in the position of a bona fide purchaser for value, appellee was not required to show a change of position in reliance on the overpayment. This is so because the doctrine of bona fide purchaser is grounded on an assumption of a change of position. It has been suggested that the defense of bona fide purchaser "may be nothing more than an instance of change of position grown doctrinaire." 45 Harv.L. REV. 1342 (1931–32). It follows that had appellee known of the policy's monetary limitations, or had it received money in excess of services rendered, the result would be different.

There is no moral issue involved here. This exception to the general rule allowing restitution for money paid under mistake of fact is simply an equitable limitation that places the loss, as between two innocent parties, on the one who has created the situation and was in the best position to have avoided it. Appellant, possessing the policy and the knowledge of its terms, made the mistake and, as between it and the appellee hospital, it must bear the loss.

We affirm the summary judgment.